United States District Court
Southern District of Texas
FILED

FEB 1 4 2000

Michael N. Milby, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI ~~VICTORIA~~ DIVISION

| | | |
|---|---|---|
| ISAIAH HILBURN | § | |
| | § | |
| Plaintiff | § | **C-00-063** |
| | § | |
| vs. | § | Civil Action No._____ |
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | **JURY TRIAL REQUESTED** |
| JUSTICE; TROY SIMPSON, In His | § | |
| Individual and in his Official Capacities | § | |

Defendant.

## PLAINTIFF'S ORIGINAL COMPLAINT

Comes now Plaintiff, by and through counsel, and in support of his claims against the above-named Defendants respectfully states:

### NATURE OF THE ACTION

In this action, Plaintiff alleges violation of his rights pursuant to 42 U.S.C. §1983 and Title VII. Plaintiff also alleges that Defendants failed to afford Plaintiff all rights he was entitled to pursuant to the Family Medical Leave Act and retaliated against him for exercising his Family Medical Leave rights. Plaintiff further alleges that Defendants discriminated against him in their disparate and different treatment of him based upon his race. Plaintiff further alleges that Defendants violated the Fair Labor Standards Act. Plaintiff also alleges violation of his right to freedom of speech and violations of his right to petition the government for redress of grievances.

### PARTIES

1.    Plaintiff, Isaiah Hilburn, an Anglo male, is an individual residing at 108 E. Roberts, Beeville, Bee County, Texas 77102.

2.    Defendant, Texas Department of Criminal Justice, is a governmental entity and

service of process will be attempted by waiver pursuant to the Federal Rules of Civil Procedure.

3.      Defendant, Troy Simpson, a black male, was the warden at the unit where Plaintiff was assigned. He is a resident of Beeville, Bee County, Texas. Service of process will be attempted by waiver pursuant to the Federal Rules of Civil Procedure.

JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action by reason of 28 U.S.C. 1331 and 1343, in that Plaintiff, pursuant to Title VII, seeks to redress racial discrimination and retaliation for protected activity he experienced at the hands of defendants. This Court also has jurisdiction of this action pursuant to 28 U.S.C. §§1331 and 1343, in that Plaintiff seeks redress for violation of his rights of free speech and due process of the law and to petition the government for redress of grievances pursuant to the First and Fourteenth Amendments to the Constitution of the United States of America and 42 U.S.C. §§1983 and 1988. The Court also has jurisdiction over Plaintiff's claims of racial discrimination brought pursuant to the Texas Commission on Human Rights Act. This Court also has jurisdiction of this action pursuant to 29 U.S.C. §§207 and 215, in that Plaintiff seeks redress for violations of the Fair Labor Standards Act. This Court has jurisdiction over this action by reason of 42 U.S.C. §1983, in that Plaintiff, pursuant to 28 U.S.C. §1343(3), seek redress for deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States of America. Venue is proper pursuant to 28 U.S.C. §1391 because the acts complained of primarily occurred within the geographical boundaries of the United States District Court for the Southern District of Texas, Corpus Christi, Division.

FACTS

5.      Plaintiff was employed with the Texas Department of Criminal Justice on February

2

3, 1994. During Plaintiff's employment, he received raises and was given positive appraisals. Plaintiff received a certificate of appreciation for dedication and loyalty by Captain McCoy. Plaintiff appeared as an expert witness on behalf of TDCJ in Federal Court on several occasions.

6.      On April 9, 1996, Plaintiff was promoted to sergeant of Correctional Officers. On April 10, 1996, Plaintiff was assigned to the 2nd shift General Population, 2:15 p.m. to 10:30 p.m. On November 20, 1996, the last day that Plaintiff was on the 2nd shift General Population, he was awarded with a Certificate of Appreciation by the Captain.

7.      On November 21, 1996, Plaintiff was assigned to the 2nd shift Administrative Segregation, 2:15 p.m. to 10:30 p.m.

8.      On August 15, 1997, Plaintiff attended the first promotion board for Lieutenant of Correctional Officers. Warden Perez conducted the interviews.

9.      On September 29, 1997, Plaintiff was reassigned to 2nd shift Administrative Segregation. Plaintiff was still a sergeant at this time.

10.      On October 29, 1997, Plaintiff attended the 2nd promotion board for Lieutenant of Correctional Officers. Warden Boothe conducted the interviews. The interviews were cancelled and rescheduled for the next day due to inmate field workers rioting.

11.      On January 13, 1998, Plaintiff turned in an application for an open Lieutenant's position. On January 15, 1998, Plaintiff attended the 3rd promotion board for the Lieutenant of Correctional Officers. Warden Perez conducted the interviews.

12.      On the morning of February 8, 1998, Plaintiff received a telephone call from Ms. Peihl, the Human Resources Supervisor. Plaintiff was told to report to Warden Perez' office at 8:00 a.m. the next morning. On February 9, 1998, Plaintiff was advised by Warden Perez that he had

3

been selected for the Lieutenant's position. Plaintiff accepted the position. Warden Diaz asked Plaintiff if he was ready to go to work. Plaintiff advised him that he was on Family Medical Leave and would return to work the first of March.

13.     On March 2, 1998, Plaintiff returned to work and worked as a Lieutenant from Monday through Friday, 8:00 a.m. to 5:00 p.m. for the first three weeks.

14.     On March 20, 1998, Plaintiff was advised that he was going to be assigned to work the 2nd shift Administrative Segregation B-card as the shift Lieutenant. Plaintiff asked Major Carrillo if he could have that night off because he had been at work since 8:00 a.m. and his shift started at 6:00 p.m. and it was already 2:00 p.m. Plaintiff was not given that evening off because the Lieutenant assigned to that shift had been given the night off. Plaintiff left the unit and returned at 5:30 p.m. for the 2nd shift. Plaintiff had less than 3 hours sleep. Plaintiff did not leave until almost 11:00 a.m. the next morning.

15.     Major Carrillo, a Hispanic male, agreed to let Plaintiff take March 21, 1998 off from work due to his lack of sleep from the long hours. On March 22, 1998, Plaintiff returned to work at 5:30 p.m. for the 2nd shift. The other Lieutenant was off again.

16.     On March 22, 1998, Plaintiff discovered that three officers failed to insure that they had the correct count on their cell block and notified Captain Bradshaw. Captain Bradshaw became angry with Plaintiff and wanted Plaintiff to write-up the officers responsible. This occurred during Plaintiff's first week in this assignment. Plaintiff told Captain Bradshaw that he wanted to review the officer's files to find out if they had been previously verbally reprimanded regarding this issue. Plaintiff was concerned that the officers had not been properly trained and he voiced his concerns to Captain Bradshaw. Captain Bradshaw again insisted that Plaintiff write-up the officers and

4

threatened to write-up Plaintiff if this was not done. Captain Bradshaw was not concerned about whether or not the officers had been properly trained.

17.     On the morning of March 23, 1998, Captain Crites, a Hispanic male, wanted an explanation for the wrong counts the night before. Plaintiff explained the situation with counts to Captain Crites. He verbally reprimanded Plaintiff and stated that he wanted to see the write-ups on the officers on his desk the next morning before Plaintiff left the unit. Again, Plaintiff was concerned about officer training and safety and had voiced his concerns to Captain Crites.

18.     Plaintiff completed all three of the write-ups that night. That night, during the turn-out meeting, Plaintiff asked the shift how many of them did not understand the correct count procedures and how many count-times were called on the 2nd shift. Over half of the shift raised their hands. Plaintiff then went over the count-times and count procedures with them. Plaintiff voiced his concern and opinions about the officer's failure to have proper training to his superiors and Plaintiff faced subsequent retaliation for speaking out about matters of public concern, specifically officer training and safety.

19.     Plaintiff was written up while he was out on Family Medical Leave. In effect, Defendants, were requiring Plaintiff to continuing working even though he was out on Family Medical Leave. This is in violation of the Family Medical Leave Act.

20.     Plaintiff was forced to wait lengthy periods before his requests for time off would be approved, while Hispanic lieutenants received approval for time off within a couple of days. Plaintiff had requested the period of July 2, 1998-July 6, 1998 off in April 1998. However, he did not learn that his request had been disapproved until July 2, 1998. Plaintiff had requested July 10, 1998 through July 13, 1998 off because his wife was having surgery and he was scheduled to testify

5

Simpson told Plaintiff that "No means no". Warden Simpson told Plaintiff that he used improper

practices to obtain time off. Plaintiff explained that he had requested the leave back in August of

1998 and that it had never been returned to him by Major Carrillo. Warden Simpson then told

Plaintiff, "Well Lieutenant, it looks like to me you just got fucked out of your time off."

24.     Plaintiff was to be off for Thanksgiving 1998. However, he was not informed until

the last minute that he would be off during this cycle.

25.     In late November 1998, a Hispanic lieutenant told an Anglo Sargent, "I don't know

what the deal is with Simpson and Hilburn, but Simpson's in here almost everyday looking for

inmate grievances that might have Hilburn's name in them. He's got it in for Hilburn for some

reason." A few days later, Plaintiff asked the lieutenant if Simpson had been in "Grievance" looking

for things with his name on it. The lieutenant said he had, but not to worry about it that the Wardens

were always picking on supervisors, and Simpson would get bored with Hilburn and look for

someone else to mess with next month.

26.     Plaintiff was written up for falsification of records by Warden Simpson and Major

Carrillo. Policy and time constraints were deliberately violated by Defendants in brining this charge

against Plaintiff. The charge was rewritten as substandard duty performance. Plaintiff was denied

the right to view the evidence against him. Documentation for Plaintiff's defense was never

forwarded to the reprimanding authority. The disciplinary, by policy, is only supposed to be down

graded in the disciplinary hearing by the reprimanding authority. Warden Simpson was not the

reprimanding authority.

27.     Plaintiff filed an employee grievance on the disciplinary. After Plaintiff filed the

employee grievance, he was constantly written up for minor things at the direction of Warden

7

Simpson.  One instance of this was that Plaintiff was written up while being on Family Medical Leave to care for his daughter while she was having surgery.  During this period, one of Plaintiff's sargents failed to turn in the monthly safety training for the shift.  Warden Simpson had Captain Glover write him up for this even though Plaintiff had been on FMLA leave during this period of time and other lieutenants were covering Plaintiff's shift.

28.     Warden Simpson was abrasive with Plaintiff over the telephone while Plaintiff would explain to the Warden situations involving offenders and trying to get authorization from him to carry out Plaintiff's duties.

29.     Major Carrillo and Captain Crites, both Hispanic males, failed to keep Warden Simpson up to date on issues dealing with Plaintiff's shift, staff and incidents that occurred while Plaintiff was unable to work.  This caused Plaintiff to be under tremendous stress.

30.     Due to the constant retaliation by Defendants, it was necessary for Plaintiff to seek medical treatment.

31.     On April 19, 1999, Plaintiff was approached by Major Norris Jackson, a black male, in the parking lot.  Major Jackson replaced Major Carrillo on April 1, 1999.  Major Jackson told Plaintiff that his reports and emails from the past weekend were pitiful and if Captain Glover knew what was good for him he would be putting it on paper to insure things are corrected.  Major Jackson told Plaintiff that Plaintiff's request to be moved to the day shift and/or the Administrative Lieutenants slot could be forgotten about because Warden Simpson is going to put who he wants working where he wants them when he is ready to.  Plaintiff had spent his five and one half years with Defendants working nights.  Both prior to this statement and after, Plaintiff was continually passed over for several rotations while other, non-Anglo, lieutenants moved to other shifts and other

8

departments.

32.     Plaintiff's grievances were never fairly processed.  Those persons that disciplined
Plaintiff were the same persons making the decisions about the outcome of his grievance.

33.     It was mandatory for Plaintiff to attend all staff meetings whether or not he worked
the night before or had the night off.  No other employee was required to do this.

34.     In April 1999, Plaintiff and Lieutenant Rodney Andersen, an Anglo, had to sign a
letter of instruction for an incident involving a tray slot being unsecured for two days, even though
there were no dates, times, inmate or cell number.  Warden Simpson had Captain Glover have
Plaintiff and Lieutenant Andersen sign these letters.  The Hispanic lieutenant that worked the A card
shift did not have to sign the same letter.

35.     Major Carrillo would have his secretary call Plaintiff's home at all hours of the day
interrupting Plaintiff's sleep.

36.     Plaintiff's Use of Force packet was removed from his filing cabinet at work and
taken to Warden Simpson with the intention of using it to write Plaintiff up on disciplinary.

37.     On several occasions, Warden Simpson would require Plaintiff to stay on the unit
until he arrived.  This would mean that Plaintiff would be required to work an additional one and
one-half hour until Warden Simpson arrived.

38.     Plaintiff's requests to attend training courses were neither considered nor addressed
by Major Carrillo.   Other non-Anglo were not similar treated in regards to this training.  These
training courses were considered heavily in promotion within TDCJ.

39.     Plaintiff was continually assigned new, untrained sargents.  Once Plaintiff had
trained them, they were moved to another shift or department.      Plaintiff was assigned to

9

administrative segregation which is one of the most dangerous assignments within the TDCJ system. Having trained, experienced officers was important for safety reasons. Plaintiff had spoke with Defendants about this on several occasions. Plaintiff had specifically requested that Sargent Cordova be allowed to stay in his shift. However, immediately after Plaintiff's request, Warden Simpson had Sargent Cordova moved to another shift.

40.     Mr. Hilburn alleges that he was not properly compensated for the overtime hours that he worked for this employer in violation of the Fair Labor Standards Act. Plaintiff was not exempt from overtime as set-out in the Fair Labor Standards Act.

41.     The constant retaliation and undue hardships placed upon Plaintiff by Defendants forced Plaintiff to resign on April 21, 1999.

CLAIMS

**Violation of 42 U.S.C. §1983**

42.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 41.

43.     As alleged above in detail, Plaintiff has been deprived of the fundamental rights and privileges as guaranteed by 42 U.S.C. §1983 and Title VII.

**Racial Discrimination and Retaliation for Opposing Discrimination**

**in Violation of Title VII**

44.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 41.

45.     Through the above alleged actions up to and including Plaintiff's discharge, Defendants violated Plaintiff's federally protected rights by treating him disparately in terms and

10

conditions of employment when compared to non-white Anglos.

46.     As a result of the above alleged illegal acts, Plaintiff has suffered the loss of wages and benefits, loss of job opportunity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

## Family Medical Leave Act

47.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 41.

48.     Through the above alleged action up to and including Plaintiff's discharge, Defendant knowingly and/or recklessly violated the Family Medical Leave Act.

## Texas Commission on Human Rights Act

49.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 41.

50.     Through the above alleged actions up to and including Plaintiff's discharge, Defendant violated the Texas Commission on Human Rights Act based upon discrimination based upon race.  Because these factors were a motivating factor and made a difference in the discharge of Plaintiff, Defendant violated the Texas Commission on Human Rights Act, with knowledge and/or reckless disregard of that Act's proscriptions.

## Violation of the Fair Labor Standards Act

51.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 41.

52.     At all relevant times, defendants improperly failed to pay Plaintiff overtime or otherwise compensate her pursuant to the Fair Labor Standards act for hours worked over forty in

11

a work week. Plaintiff asserts that these violations were willful.

### Violation of Freedom of Speech

53.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 41.

54.    Plaintiff's grievances constituted federally protected speech on issues of public concern, including safety and officer training.

55.    Plaintiff, on numerous occasions, voiced his concern and opinions to his supervisors about the lack of officer training within TDCJ.

56.    The adverse employment actions taken against Plaintiff by Defendants were responses to Plaintiff's protected speech.

57.    By their adverse employment actions against Plaintiff, including Plaintiff's discharge, Defendants arbitrarily and capriciously infringed upon Plaintiff's right to freedom of speech authorized by the First Amendment to the United States Constitution and by Article I, Section 8 of the Texas Constitution.

58.    As a result of this violation, plaintiff has suffered the loss of wages and benefits, loss of job opportunity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

### Violation of Plaintiff's Right to Due Process of Law, Due Course of Law
### and to Petition for Redress of Grievances

59.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 41.

60.    As alleged above in detail, Plaintiff has been deprived of the fundamental rudiments

12

of procedural and substantive due process and due course of law in that his grievances were not substantially or meaningfully processed by Defendants beyond handling by the very individuals who initiated the action made the basis of the grievance.

61.     As alleged above in detail, Plaintiff was deprived of his right to due process and due course of law as well as his right to petition the government for redress of his grievances, in that his that his grievances were not substantially or meaningfully processed by Defendants beyond handling by the very individuals who initiated the action made the basis of the grievance.

### Request for Trial by Jury

62.     Plaintiff specifically requests a trial by jury.

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against defendants and award Plaintiffs the following:

1.     Actual damages plus interest;

2.     Compensatory damages arising from the physical and emotional injury, pain, suffering, loss of reputation and humiliation plaintiff suffered as a result of defendant misconduct;

3.     Punitive damages as allowed by law;

4.     Exemplary damages as allowed by law;

5.     Prejudgment interest as allowed by law;

6.     Post-judgment interest as allowed by law;

7.     Attorney's fees;

8.     Court costs; and

9.     Such other legal or equitable relief ultimately justified by the proof of this case.

Respectfully submitted,


Law Office of Gay E. Gilson
4600 Ocean Drive, Suite 104D
Corpus Christi, Texas 78412
Telephone: (512) 814-0573
Facsimile:  (512) 814-0674

By: _____
GAY E. GILSON
SBN 00784131/Fed.I.D. 16385
ATTORNEY FOR PLAINTIFF

14

United States District Court
Southern District of Texas
ENTERED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

JAN 19 2000

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| LARRY DONNELL ANDREWS | § | |
| | § | |
| V. | § | C.A. NO. C-99-344 |
| | § | |
| MAXIMILIANO HERRERA, ET AL | § | |

## ORDER ADOPTING MEMORANDUM AND RECOMMENDATION

On this day it was brought to the attention of the undersigned that United States Magistrate Judge Jane Cooper-Hill on December 14, 1999, signed a Memorandum and Recommendation recommending that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed as barred by the Eleventh Amendment, and that Plaintiff's deliberate indifference to medical needs claims against all Defendants be dismissed as frivolous under § 1915(e)(2)(B)(i). On January 10, 2000, Plaintiff filed Objections to the Magistrate's Recommendations.

Having reviewed the findings of fact and conclusions of law therein, as well as the pleadings on file and Plaintiff's objections, and having made a *de novo* disposition of those portions of the Magistrate Judge's recommended disposition to which objections were raised, *see Koetting v. Thompson*, 995 F.2d 37 (5th Cir. 1993), 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P.72(b), the Court hereby adopts as its own the findings and conclusions of the Magistrate Judge.

Accordingly, it is ORDERED as follows:

1)    Plaintiff's claims for money damages against
Defendants in their official capacities are dismissed as barred by
the Eleventh Amendment; and

2)    Plaintiff's deliberate indifference to medical needs
claims against all Defendants are dismissed as frivolous under §
1915(e)(2)(B)(i)

The clerk shall enter this order and provide a copy to
all parties.

SIGNED this _18th_ day of January, 2000.

JANIS GRAHAM JACK
UNITED STATES DISTRICT JUDGE

2